**2022-2128, 22-2129**

In The
# United States Court of Appeals
For The Federal Circuit

**PRIMESOURCE BUILDING PRODUCTS, INC., CHENG CH INTERNATIONAL CO., LTD., CHINA STAPLE ENTERPRISE CORP., DE FASTENERS INC., HOYI PLUS CO., LTD., LIANG CHYUAN INDUSTRIAL CO., LTD., TRIM INTERNATIONAL INC., UJL INDUSTRIES CO., LTD., YU CHI HARDWARE CO., LTD., ZON MON CO., LTD,**

*Plaintiffs – Appellants,*

v.

**UNITED STATES, MID CONTINENT STEEL & WIRE, INC.,**

*Defendants – Appellees.*

**APPEALS FROM THE UNITED STATES COURT OF INTERNATIONAL TRADE IN NOS. 1:20-CV-03911-MAB, 1:20-CV-03934-MAB, JUDGE MARK A BARNETT.**

**CORRECTED BRIEF OF APPELLANTS CHENG CH INTERNATIONAL CO., LTD., CHINA STAPLE ENTERPRISE CORP., DE FASTENERS INC., HOYI PLUS CO., LTD., LIANG CHYUAN INDUSTRIAL CO., LTD., TRIM INTERNATIONAL INC., UJL INDUSTRIES CO., LTD., YU CHI HARDWARE CO., LTD., and ZON MON CO., LTD.**

Kelly A. Slater
APPELTON LUFF PTE. LTD.
1025 Connecticut Avenue NW, Suite 1000
Washington, DC 20036
(301) 649-2149

*Counsel for Appellants Cheng Ch International Co., Ltd., China Staple Enterprise Corp., De Fasteners Inc., Hoyi Plus Co., Ltd., Liang Chyuan Industrial Co., Ltd., Trim International Inc., Ujl Industries Co., Ltd., Yu Chi Hardware Co., Ltd., and Zon Mon Co., Ltd.*

THE LEX GROUP[DC] ♦ 1050 Connecticut Avenue, N.W. ♦ Suite 500, #5190 ♦ Washington, D.C. 20036
(202) 955-0001 ♦ (800) 856-4419 ♦ www.thelexgroup.com

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 22-2128 and 22-2129

**Short Case Caption** PrimeSource Building Products, Inc. v. US

**Filing Party/Entity** Cheng Ch International Co , Ltd , China Staple Enterprise Corporation, De Fasteners Inc , Hoyi Plus Co , Ltd , Liang Chyuan Industrial Co , Ltd , Trim International Inc , UJL Industries Co , Ltd , Yu Chi Hardware Co , Ltd , and Zon Mon Co , Ltd

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/31/2022

Signature: /s/ Kelly A. Slater

Name: Kelly A. Slater

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Cheng Ch International Co., Ltd. | | |
| China Staple Enterprise Corporation | | |
| De Fasteners Inc. | | |
| Hoyi Plus Co., Ltd. | | |
| Liang Chyuan Industrial Co., Ltd. | | |
| Trim International Inc. | | |
| UJL Industries Co., Ltd. | | |
| Yu Chi Hardware Co., Ltd. | | |
| Zon Mon Co., Ltd. | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Appleton Luff Pte Ltd | Edmund W. Sim | Kelly A. Slater |
| Jay. Y Nee | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... iii

I. STATEMENT OF RELATED CASES .......... v

II. JURISDICTIONAL STATEMENT .......... 1

III. STATEMENT OF THE ISSUE .......... 1

IV. STATEMENT OF THE CASE .......... 2

V. STATEMENT OF FACTS .......... 4

VI. SUMMARY OF ARGUMENT .......... 6

VII. ARGUMENT .......... 6

A. Standard of Review .......... 6

B. Commerce's Decision to Apply an "All Others" Rate to Taiwan Plaintiff-Appellants Based on Total AFA Is Unreasonable, and Thus Should Be Reversed as a Matter of Law .......... 8

1. Legal Standard for the "All-Others" Rate .......... 8

2. The Legal Standard for the "All-Others" Rate Supports Taiwan Plaintiff-Appellants' Position That the Application of the Total AFA Rate to Them Was Unreasonable .......... 9

3. Substantial Record Evidence Was Available to Reasonably Reflect The "Potential" Dumping Margins of the Taiwan Plaintiff-Appellants, Without Having to Resort to Total AFA Treatment .......... 11

VIII. CONCLUSION .......... 14

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Albemarle Corp. v. United States*,
821 F.3d 1345 (Fed. Cir. 2016) ....................11, 12, 13, 14

*Amanda Foods (Vietnam) Ltd. v. United States*,
714 F. Supp. 2d 1282 (Ct. Int'l Trade 2010)....................13

*Atlantic Sugar, Ltd. v. United States*,
744 F.2d 1566 (Fed. Cir. 1984) ....................7

*Consolidated Bearings Co. v. United States*,
25 CIT 546, 166 F. Supp. 2d 580 (Ct. Int'l Trade 2001) ....................7

*Consolidated Edison Co. v. NLRB*,
305 U.S. 197, 59 S. Ct. 206, 83 L. Ed. 126 (1938) ....................7

*Fujian Machinery and Equipment Import and Export Corporation v. United States*,
25 CIT 1150, 178 F. Supp. 2d 1305 (Ct. Int'l Trade 2001) ....................7

*Magnesium Corp. of America v. United States*,
166 F.3d 1364 (Fed. Cir. 1999) ....................6

*Mueller Comercial de Mexico, S. de R.L. De C.V. v. United States*,
753 F.3d 1227 (Fed. Cir. 2014) ....................13

*PrimeSource Bldg. Prods. Inc. v. United States*,
Consol. Ct. No. 20-03911,
Slip Op. 22-73 (Ct. Int'l Trade June 16, 2022) ....................2

*Star Fruits S.N.C. v. United States*,
393 F.3d 1277 (Fed. Cir. 2005) ....................8

*Xiamen Int'l Trade and Indus. Co., Ltd. v. United States*,
953 F. Supp. 2d 1307 (Ct. Int'l Trade 2013)....................9

*Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*,
716 F.3d 1370 (Fed. Cir. 2013) .......................................................................11

**STATUTES**

19 U.S.C. § 1516a(a)(2)(A)(i)(I).........................................................................1

19 U.S.C. § 1516a(a)(2)(B)(iii)...........................................................................1

19 U.S.C. § 1516a(b)(1)(B)(i).............................................................................7

19 U.S.C. § 1673d(c)(5).....................................................................................9

19 U.S.C. § 1673d(c)(5)(A) ...........................................................................8, 9

19 U.S.C. § 1673d(c)(5)(B) ........................................................................3, 8, 9

19 U.S.C. § 1673e(d) .......................................................................................12

28 U.S.C. § 1581(c) ...........................................................................................1

28 U.S.C. § 1295(a)(5)........................................................................................1

28 U.S.C. § 2645(c) ...........................................................................................1

**RULE**

Fed. R. App. P. 4(a)(1)(B) ..................................................................................1

**OTHER AUTHORITY**

Trade Preferences Extension Act of 2015,
Pub. L. No. 114-27 (June 29, 2015)...................................................................12

# I. STATEMENT OF RELATED CASES

Counsel for Plaintiff-Appellants Cheng Ch International Co., Ltd., China Staple Enterprise Corporation, De Fasteners Inc., Hoyi Plus Co., Ltd., Liang Chyuan Industrial Co., Ltd., Trim International Inc., UJL Industries Co., Ltd., Yu Chi Hardware Co., Ltd., and Zon Mon Co., Ltd. (collectively, "Taiwan Plaintiff-Appellants") are not aware of any appeal in or from this same civil action that has previously been before this Court or any other appellate court. Taiwan Plaintiff-Appellants are also not aware of any pending actions that stand to be directly affected by the Court's decision in this appeal.

## II. JURISDICTIONAL STATEMENT

Taiwan Plaintiff-Appellants appeal from the final judgment of the CIT sustaining the U.S. Department of Commerce's *Final Results*. *See* Joint Appendix ("Appx"), Appx0001-00023. The CIT had jurisdiction over the appeal pursuant to 28 U.S.C. § 1581(c), and 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii). This Court has jurisdiction to review the CIT's decision pursuant to 28 U.S.C. § 1295(a)(5).

The CIT's judgment was entered on June 16, 2022. *Id*. Taiwan Plaintiff-Appellants timely filed their appeal with the Court on August 12, 2022, which was within 60 days of the entry of judgment, as required by Federal Rule of Appellate Procedure 4(a)(1)(B) and 28 U.S.C. § 2645(c).

## III. STATEMENT OF THE ISSUE

Whether the U.S. Department of Commerce's ("Commerce") decision to apply an "all-others" antidumping duty (AD) rate to Taiwan Plaintiff-Appellants based solely on the total adverse facts available ("total AFA") rate applied to the two mandatory respondents individually examined in the proceeding was based on substantial evidence or was in otherwise in accordance with law.

## IV. STATEMENT OF THE CASE

Taiwan Plaintiff-Appellants appeal the decision of the CIT affirming Commerce's *Final Results* in the AD administrative review of certain steel nails from Taiwan, in which Commerce, *inter alia*, applied AFA rates to Taiwan Plaintiff-Appellants based on the total AFA rate given to the two respondent parties selected for individual examination in the proceeding, but who did not cooperate in it. Commerce thus applied the total AFA rate to Taiwan Plaintiff-Appellants as well. While they had not been selected for individual examination themselves, Taiwan Plaintiff-Appellants were fully cooperative in the proceeding but nonetheless were ultimately treated as if they had not been cooperative. The CIT affirmed Commerce's decision. *See generally PrimeSource Bldg. Prods. Inc. v. United States*, Consol. Ct. No. 20-03911, Slip Op. 22-73 (Ct. Int'l Trade June 16, 2022), Appx0001-00023.

Taiwan Plaintiff-Appellants challenge Commerce's decision to apply the total AFA rate to them in the underlying proceeding, given that they were cooperative respondent parties who were not selected for individual examination, but yet were penalized by a total AFA rate as a result of the actions of the respondents who had been selected for individual examination, but were not cooperative.

As at the CIT, our challenge remains grounded in the provisions of the Tariff Act of 1930 (the "Statute") which provide that AD margins for non-examined, cooperative respondents (commonly referred to as "all-other respondents") in AD duty administrative reviews should be the weighted average of the rates assigned to all respondents individually examined, but excluding rates assigned to mandatory respondents that are based on either total AFA or *de minimis* rates. The Statute further provides alternative guidance in situations where all of the respondents individually examined receive either total AFA or *de minimis* rates, thus making it impossible for Commerce to calculate weight-averaged rates of the mandatory respondents for purposes of assigning rates to the all-other respondents. In those cases, Commerce "may use any reasonable method" to establish a rate for those respondents. 19 U.S.C. § 1673d(c)(5)(B) (1994) (emphasis added).

Taiwan Plaintiff-Appellants respectfully submit that substantial record evidence was in place on the underlying administrative record for assigning an "all-others" rate to them in the *Final Results* without having to resort to a punitive, total AFA rate, but rather to assign a rate based on alternative evidence which constituted a more reasonable reflection of rates calculated for cooperative respondents in prior segments of the proceeding. Such evidence was available on the record in the now-contested segment in the form of individually calculated rates in prior review segments involving nails from Taiwan; however, Commerce

dismissed this evidence in the *Final Results*, opting instead to apply punitive, total AFA treatment to Taiwan Plaintiff-Appellants.

Thus, in concert with the language of the Statute and the substantial evidence standard of review also required under law, we maintain our challenge to the unreasonably punitive, total AFA treatment applied to Taiwan Plaintiff-Appellants in the *Final Results*, and ask the Court to reverse this decision.

## V. <u>STATEMENT OF FACTS</u>

On September 9, 2019, Commerce initiated the antidumping duty administrative review of *Certain Steel Nails from Taiwan* for the review period of July 1, 2018, to June 30, 2019 (POR). *See* P.R. 6, Appx0050-0063. On April 6, 2020, Commerce published the preliminary results of review in the Federal Register. *See* P.R. 57, Appx0545-0548. On November 27, 2020, Commerce published in the Federal Register the *Final Results*. *See* P.R. 92, Appx0634-0636.

On October 22, 2019, Commerce selected two Taiwanese respondent companies, Bonuts Hardware Logistics Co., LLC ("Bonuts") and Create Trading Co., Ltd. ("Create"), for individual examination in the proceeding based on U.S. Customs and Border Production (CBP) data which showed that they were the two largest producer/exporter companies, by volume of subject merchandise sold during the POR. *See* C.R. 5, P.R. 229, at Appx0141. Bonuts did not respond to Commerce's request for information about its POR sales of subject merchandise to

the United States. *See* P.R. 46 at Appx0520. Create, for its part, did respond to Commerce's request for information by stating that it had no POR sales of subject merchandise, and thus asked that it be excused from participation in the proceeding. *See id*. at Appx0520-0521. Commerce accepted Create's request in principle, but reserved the right to verify the accuracy of Create's no shipments claim, if needed. *See id*. at Appx0522.

This prompted Commerce to select another mandatory respondent, Pro Team Coil Nail Enterprise Inc. ("Pro Team"), because the CBP data showed that Pro Team was the next largest producer/exporter company, by volume, of subject merchandise sold during the POR. *See id*. On January 31, 2020, Pro Team notified Commerce that it also would not respond to its requests for information. *See id*. at Appx0523. Commerce did not select any other mandatory respondents in the proceeding after that.[1]

[1] We note as an ancillary matter that, shortly after Pro-Team notified Commerce that it would not participate in the proceeding, one of the non-selected Taiwan respondents (who is also a Plaintiff-Appellant in this appeal), Liang Chyuan Industrial Co., Ltd. ("LC"), volunteered to serve as a mandatory respondent in the proceeding so that a company-specific AD margin could be calculated for it. *See* Appx0526-0529. Under the circumstances at that time, it appeared that the only AD rate that might be applied to LC and/or other non-selected respondents might be based on total AFA. *See id*. at Appx0526. Ultimately, Commerce declined LC's request for individual examination. *See* P.R. 55 at Appx0538. We further note that LC did not challenge this element of Commerce's underlying decision at the CIT, but nonetheless notes it for the Court's reference in terms of elucidating the factual record.

Commerce's decision in the *Final Results* gave total AFA treatment to the mandatory respondents selected for individual examination in the proceeding, given their total non-cooperation in it—a treatment that clearly accords with the language of the Statute. What is less clear is whether it was "reasonable" for Commerce to treat Taiwan Plaintiff-Appellants, parties who were cooperative respondents not selected for individual examination, with a punitive, total AFA rate as an "all others" AD rate as well. *See* P.R.92 at Appx0635.

## VI. SUMMARY OF ARGUMENT

Commerce's decision to apply an "all-others" antidumping duty (AD) rate to the cooperative Taiwan Plaintiff-Appellants based solely on the punitive, total AFA rate applied to the two non-cooperative mandatory respondents selected for individual examination in the proceeding was not based on substantial evidence or was otherwise not in accordance with law.

## VII. ARGUMENT

### A. Standard of Review

This Court reviews decisions of the CIT *de novo*, applying "the statutory standard anew" to determine whether a Commerce determination is lawful. *Magnesium Corp. of America v. United States*, 166 F.3d 1364, 1369 (Fed. Cir. 1999). Under the statutory standard, Commerce decisions are deemed unlawful if

they are not supported by substantial evidence or are otherwise unsupported by law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

Regarding questions of fact, "{s}ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938). Substantial evidence is measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1566, 1562 (Fed. Cir. 1984) (citations omitted).

The Court moreover must vacate a Commerce decision that is arbitrary, capricious, or an abuse of discretion. *See Fujian Machinery and Equipment Import and Export Corporation v. United States*, 25 CIT 1150, 1156, 178 F. Supp. 2d 1305 (Ct. Int'l Trade 2001) (stating that the "arbitrary and capricious standard focuses on the rationality of an agency's decision-making process rather than on the rationality of the decision") (citation omitted). Moreover, under the arbitrary and capricious standard of review, the Court generally will not uphold a Commerce action where the agency's "conclusion was plainly unreasonable or irrational." *Consolidated Bearings Co. v. United States*, 25 CIT 546, 554, 166 F. Supp. 2d 580 (Ct. Int'l Trade 2001) (citation omitted). The Court has found that an agency abused its discretion "where the decision is based on an erroneous interpretation of

the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) (emphasis added).

### B. Commerce's Decision to Apply an "All Others" Rate to Taiwan Plaintiff-Appellants Based on Total AFA Is Unreasonable, and Thus Should Be Reversed as a Matter of Law

#### 1. Legal Standard for the "All-Others" Rate

Section 1673d(c)(5)(A) the Statute provides that AD margins for non-examined, cooperative respondents should be the weighted average of the rates assigned to all respondents individually investigated, excluding rates assigned to mandatory respondents that are based on either total AFA or *de minimis* rates. Section 1673d(c)(5)(B) of the Statute provides alternative guidance in situations where all mandatory respondents individually investigated receive either total AFA or *de minimis* rates, thus making it impossible for the Department to weight average rates of the mandatory respondents. In those cases, the Department "may use any reasonable method" to establish the all-others rate. 19 U.S.C. § 1673d(c)(5)(B).

### 2. The Legal Standard for the "All-Others" Rate Supports Taiwan Plaintiff-Appellants' Position That the Application of the Total AFA Rate to Them Was Unreasonable

In past cases, the requirement that AD rates assigned be reasonable reflections of non-examined, cooperating respondents' actual margins applies to determinations made under section 1673d(c)(5)(A) and section 1673d(c)(5)(B), as noted above. *See*, *e.g.*, *Xiamen Int'l Trade and Indus. Co., Ltd. v. United States*, 953 F. Supp. 2d 1307, 1327 (Ct. Int'l Trade 2013) ("According to the Government, if Commerce applies the general rule (*i.e.*, weight averages all margins that are not zero, *de minimis*, or based on total facts available), it need not consider whether the resulting rate reasonably reflects potential dumping margins for separate rate respondents. . . . While this is correct as a general rule, it is nonetheless illogical not to expect that the preferred methodology should also reasonably reflect potential dumping margins.")). In light of the foregoing, the attribution of the total AFA rate to Taiwan Plaintiff-Appellants in the underlying proceeding as all-other rate respondents is illogical and unreasonable, unsupported by substantial evidence, and contrary to law.

On this same issue, the CIT and this Court have consistently held that when Commerce determines margins for cooperative respondents that are not individually examined, under 19 U.S.C. § 1673d(c)(5), it nonetheless must calculate rates that are reasonable reflections of the non-examined, cooperative

respondent's actual dumping margin. However, Commerce did not undertake any such examination with respect to the Taiwan Plaintiff-Appellants in the *Final Results*.

Taiwan Plaintiff-Appellants understand that when mandatory respondents selected for individual examination are not cooperative in a Commerce proceeding, this can present a conundrum with respect to how Commerce might deal with the smaller, other exporters shipping to the U.S. market—like the Taiwan Plaintiff-Appellants—who chose to participate in Commerce proceedings in a cooperative manner, but who were not selected for individual examination. Such smaller exporters perhaps never will be individually examined by Commerce in light of their much smaller export volumes, but the Statute nonetheless provides an opportunity for them to participate in the proceeding and moreover provides direction with respect to the AD duty treatment of non-examined, relatively smaller exporters in an administrative review such as the one now challenged.

If those such respondents are willing to cooperate in the proceeding in accordance with Commerce's instructions, and indeed do cooperate to the best of their abilities, then it stands to reason that Commerce's decision to penalize them with a total AFA rate applied to uncooperative mandatory respondents is fundamentally unreasonable. In this case, Taiwan Plaintiff-Appellants were effectively being penalized just for being smaller exporters, despite their

cooperativeness in the proceeding. While the practical realities of the matter might not be strictly governed by the Statute, they nonetheless dovetail with Court precedent on this issue which mandates that Commerce must treat parties such as Taiwan Plaintiff-Appellants with accuracy and fairness in the application of AD margins to them.

#### 3. Substantial Record Evidence Was Available to Reasonably Reflect The "Potential" Dumping Margins of the Taiwan Plaintiff-Appellants, Without Having to Resort to Total AFA Treatment

This Court has stated that "{a}ccuracy and fairness must be Commerce's primary objectives in calculating a separate rate for cooperating exporters." *Albemarle Corp. v. United States*, 821 F.3d 1345, 1354 (Fed. Cir. 2016). The Court has moreover stated that "{r}ate determinations for nonmandatory, cooperating separate rate respondents must . . . bear some relationship to their actual dumping margins." *Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*, 716 F.3d 1370, 1380 (Fed. Cir. 2013). This was not the case for Taiwan Plaintiff-Appellants, however, as the only dumping margins applied to them were based on total AFA.

Taiwan Plaintiff-Appellants maintain their position that, with respect to the issues presented here, the blanket total AFA rate attributed to them bears no relationship whatsoever to any actual dumping margin calculated based on any reported sales and cost information in the proceeding—whether from the non-

cooperative mandatory respondent companies, or any other respondent sources who tried to submit information, but were rejected. There was no such reported information on the record, and so Commerce behaved as if it was dealing in an evidentiary vacuum. Commerce's responsibility under law was to find a "reasonable" method, but it instead chose a knee-jerk, punitive method to apply across the board for even the cooperative respondents in the proceeding.

Taiwan Plaintiff-Appellants question the AFA rate applied to them as having little or no relationship to the administrative record, much less commercial reality, and so raises doubts about whether Commerce's decision with respect to the Taiwan Plaintiff-Appellants is based on substantial evidence, in accordance with law, or as reasonable. As Taiwan Plaintiff-Appellants explained in the underlying proceeding, this Court has noted that although amendments to 19 U.S.C. § 1673e(d) pursuant to the Trade Preferences Extension Act of 2015, Pub. L. No. 114-27 (June 29, 2015) arguably free Commerce from any obligation to demonstrate that the margin selected for a non-cooperative respondent reflects some form of commercial reality, the amendment cannot reasonably free Commerce from its obligation to do so when it comes to non-examined, cooperative respondents. *See*, *e.g.*, P.R. 69 at Appx0557. *See also Albemarle*, 821 F.3d at 1358 ("A presumption used to encourage some companies to submit more accurate information may not reasonably be transposed onto companies which are

expressly prevented from submitting more accurate information.") (quoting *Amanda Foods (Vietnam) Ltd. v. United States,* 714 F. Supp. 2d 1282, 1294 (Ct. Int'l Trade 2010)); *see also Mueller Comercial de Mexico, S. de R.L. De C.V. v. United States*, 753 F.3d 1227, 1234 (Fed. Cir. 2014) (holding that Commerce's obligation to "arrive at 'a reasonably accurate estimate of the respondent's actual rate'" is "{a}ll the more so for a cooperating party, for which the equities would suggest greater emphasis on accuracy in the overall mix.").

Commerce's blanket reliance on the *Albemarle* decision in support of its total AFA treatment of Taiwan Plaintiff-Appellants was unwarranted in this case, particularly given that Taiwan Plaintiff-Appellants suggested a far more reasonable method based on the margin rate calculated in the then-most recently completed review segment of the proceeding, which was 12.90%, calculated for Taiwan Plaintiff-Appellant LC. See P.R. 90 at Appx0617. As this rate would have been more reflective of the cooperation demonstrated by the Taiwan Plaintiff-Appellants than the punitive 78.17 percent that was imposed on them in the *Final Results*, we respectfully submit that this could have constituted a more reasonable method, and reflective of commercial reality, under the Statute as applied to Taiwan Plaintiff-Appellants.

After all, the *Albemarle* decision makes clear and indeed echoes the plain meaning of the Statute that any rate selected under the circumstances of either total

AFA treatment of selected respondents or all *de minimis* rates calculated for such respondents, must still bear a reasonable relationship to the non-selected respondents' experience for purposes of dumping rates that those respondents receive. *Albemarle* does not forbid the use of data from earlier administrative reviews or from an original investigation, but rather stands for the proposition that using such data must be reasonably linked to "some form of commercial reality" with respect to that of Taiwan Plaintiff-Appellants, in concert with the Statute and various court precedents which have examined it.

Thus, Commerce's blanket reliance in the *Final Results* on the *Albemarle* decision in support of its total AFA treatment of the Taiwan Plaintiff-Appellants is misguided, and moreover is not based on substantial evidence or supported by law. Accordingly, the Court should reverse Commerce's decision in the *Final Results*.

## VIII. CONCLUSION

In conclusion, Taiwan Plaintiff-Appellants respectfully request that the Court reverse Commerce's decision with respect to its "all-others" treatment of the Taiwan Plaintiff-Appellants in assigning a total AFA AD rate to them in the *Final Results*.

Respectfully submitted,

/s/ Kelly A. Slater
Kelly A. Slater
**APPLETON LUFF PTE LTD**
1025 Connecticut Ave., NW
Suite 1000
Washington, D.C. 20036
(301) 649-2149

*Counsel for Appellants*
*Cheng Ch International Co., Ltd.,*
*China Staple Enterprise Corp.,*
*De Fasteners Inc., Hoyi Plus Co., Ltd.,*
*Liang Chyuan Industrial Co., Ltd.,*
*Trim International Inc.,*
*Ujl Industries Co., Ltd.,*
*Yu Chi Hardware Co., Ltd., and*
*Zon Mon Co., Ltd.*

# **ADDENDUM**

# TABLE OF CONTENTS

**Pages**

Opinion of
The United States Court of International Trade
Re: Sustaining the U.S. Department of Commerce's Final Results in
The Fourth Administrative Review of the Antidumping Duty Order
On Certain Steel Nails from Taiwan,
filed June 16, 2022 .......................................................................... Appx0001

Judgment of
The United States Court of International Trade
filed June 16, 2022 .......................................................................... Appx0024

Slip Op. 22-73

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| PRIMESOURCE BUILDING PRODUCTS, INC.,<br>Plaintiffs,<br><br>and<br><br>CHENG CH INTERNATIONAL CO., LTD., CHINA STAPLE ENTERPRISE CORPORATION, DE FASTENERS INC., HOYI PLUS CO., LTD., LIANG CHYUAN INDUSTRIAL CO., LTD., TRIM INTERNATIONAL INC., UJL INDUSTRIES CO., LTD., YU CHI HARDWARE CO., LTD., AND ZON MON CO., LTD.,<br>Consolidated-Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br>Defendant,<br><br>and<br><br>MID CONTINENT STEEL & WIRE INC.,<br>Defendant-Intervenor. | Before: Mark A. Barnett, Chief Judge<br>Consol. Court No. 20-03911 |

**OPINION**

[Sustaining Commerce's use of the expected method in its calculation of the non-selected respondents' rate in this antidumping duty review of certain steel nails from Taiwan.]

Dated: June 16, 2022

Bryan P. Cenko, Mowry & Grimson, PLLC, of Washington, DC, argued for Plaintiff. With him on the brief were Jeffrey S. Grimson, Jill A. Cramer, and Wenhui (Flora) Ji.

Kelly Slater, Appleton Luff Pte Ltd., of Washington, DC, argued for Consolidated Plaintiffs. With her on the brief was Edmund Sim.

Sosun Bae, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant. With her on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Vania Y. Wang, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

Adam H. Gordon, The Bristol Group PLLC, of Washington, DC, argued for Defendant-Intervenor. With him on the brief were Jennifer M. Smith, Ping Gong, and Lauren N. Fraid.

Barnett, Chief Judge: This consolidated action is before the court on two motions for judgment on the agency record pursuant to U.S. Court of International Trade ("CIT") Rule 56.2 challenging certain aspects of the final results issued by the U.S. Department of Commerce ("Commerce" or "the agency") in its review of the antidumping duty ("ADD") order covering certain steel nails from Taiwan. *See Certain Steel Nails From Taiwan*, 85 Fed. Reg. 76,014 (Dep't Commerce Nov. 27, 2020) (final results of antidumping duty admin. review and final determination of no shipments; 2018-2019) ("*Final Results*"), and accompanying Issues and Decision Mem., A-583-854 (Nov. 20, 2020) ("I&D Mem."), ECF No. 17-5;[1] *see also* Rule 56.2 Mot. for J. Upon the Agency R. on Behalf of Pl. PrimeSource Building Prods., Inc., ECF No. 25, and accompanying Mem. of P. & A. in Supp. of Rule 56.2 Mot. for J. Upon the Agency R. on Behalf of Pl.

[1] The administrative record associated with the underlying proceeding is contained in a Public Administrative Record ("PR"), ECF No. 17-2, and a Confidential Administrative Record ("CR"), ECF No. 17-3. PrimeSource submitted joint appendices containing all record documents cited in the Parties' respective Rule 56.2 briefs. *See* Public J.A. ("PJA"), ECF No. 31; Confidential J.A., ECF No. 30 ("CJA").

PrimeSource Building Prods., Inc., ("PrimeSource's MJAR"), ECF No. 25-2; Rule 56.2 Mot. for J. Upon the Agency R. on Behalf of Consol. Pls., and accompanying Mem. of P. & A. in Supp. of Consol. Pls.' Rule 56.2 Mot. for J. Upon the Agency R. ("Consol. Pls.' MJAR"), ECF No. 24.

Specifically, Plaintiff PrimeSource Building Products, Inc. ("PrimeSource") and Consolidated Plaintiffs Cheng Ch International Co., Ltd., China Staple Enterprise Corporation, De Fasteners Inc., Hoyi Plus Co., Ltd., Liang Chyuan Industrial Co., Ltd., Trim International Inc., UJL Industries Co., Ltd., Yu Chi Hardware Co., Ltd., and Zon Mon Co., Ltd., (together with PrimeSource, "Plaintiffs") challenge the review-specific rate received by the companies not selected by Commerce for individual examination in this review (referred to herein as the "non-selected respondents' rate"). *See* PrimeSource's MJAR at 13–42; Consol. Pls.' MJAR at 2–6. Plaintiffs request remand to the agency for the determination of a new rate to be applied to the non-selected respondents. *See* PrimeSource's MJAR at 42–43; Consol. Pls.' MJAR at 6. Defendant United States ("the Government") and Defendant-Intervenor Mid Continent Steel & Wire Inc. ("Mid Continent") urge the court to sustain the *Final Results*. Def.'s Resp. to Pls.' Mots. for J. Upon the Agency R. (Def.'s Resp.") at 23, ECF No. 26; Def.-Int. Mid Continent Steel & Wire, Inc.'s Resp. Br. ("Def.-Int.'s Resp.) at 17, ECF No. 27.

As will be discussed in detail below, while the rates assigned to the mandatory respondents (i.e., the selected respondents) were determined based on adverse facts available ("AFA"), Commerce is not barred from using those rates to determine the non-selected respondents' rate. As such, resolution of this case in part turns on whether the

mandatory respondents may be considered representative of the non-selected respondents. In evaluating this issue, the court considers whether the burden lies on Commerce to affirmatively find that the expected method results in a rate reasonably reflective of the potential dumping margins of the non-selected respondents, or on Plaintiffs to demonstrate that Commerce must depart from the expected method. The court concludes that the burden is on the party seeking a departure from the expected method, in this case, Plaintiffs, and finds that Commerce's reliance on the expected method is otherwise supported by substantial evidence and in accordance with law. Consequently, the court sustains Commerce's use of the expected method in calculating the rate for non-selected respondents.

## BACKGROUND

On July 25, 2014, Commerce initiated an antidumping duty investigation of certain steel nails from various countries. *See Certain Steel Nails From India, the Republic of Korea, Malaysia, the Sultanate of Oman, Taiwan, the Republic of Turkey, and the Socialist Republic of Vietnam*, 79 Fed. Reg. 36,019 (Dep't Commerce June 25, 2014) (initiation of less-than-fair-value investigations). Following affirmative determinations by Commerce and the U.S. International Trade Commission, Commerce issued an antidumping duty order on certain steel nails from Taiwan. *See Certain Steel Nails From the Republic of Korea, Malaysia, the Sultanate of Oman, Taiwan, and the Socialist Republic of Vietnam*, 80 Fed. Reg. 39,994 (Dep't Commerce July 13, 2015).

On September 9, 2019, Commerce initiated the fourth administrative review of the antidumping duty order covering steel nails from Taiwan. *See Initiation of*

*Antidumping and Countervailing Duty Admin. Review*, 84 Fed. Reg. 47,242, 47,247 (Dep't Commerce Sept. 9, 2019). For this review, Commerce selected two mandatory respondents for individual examination: Bonuts Hardware Logistics Co., LLC ("Bonuts") and Create Trading Co., Ltd. ("Create"), the two respondent companies that accounted for the largest volume of subject merchandise from Taiwan during the period of review.[2] *See* I&D Mem. at 9. Commerce issued questionnaires to Bonuts on October 23, 2019, and to Create on October 28, 2019. *Certain Steel Nails From Taiwan*, 85 Fed. Reg. 19,138, 19,138 (Dep't Commerce April 6, 2020) (prelim. results of antidumping duty admin. review and prelim. determination of no shipments; 2018–2019) ("*Prelim. Results*"), and accompanying decision mem. ("Prelim. Mem.") at 2, PR 55, PJA Tab 12. Bonuts did not respond. *See* Prelim. Mem. at 2. Create submitted a letter indicating that it had no reviewable sales during the relevant period such that it was not required to respond to the questionnaire. *Id.* at 2 n.10. Commerce accordingly "excused" Create from responding to the questionnaire and selected another respondent to individually examine. *Id.* at 2.

To replace Create, Commerce selected Pro-Team Coil Nail Enterprise, Inc. ("Pro-Team"), the next-largest respondent exporter by volume, as a new mandatory respondent. *See id.* at 2–3. Pro-Team submitted a letter indicating that it would not respond to the questionnaire. *See id.* at 3.

---

[2] 19 U.S.C. § 1677f-1(c)(2) (2018) permits Commerce to select the largest exporters by volume for individual examination when it is "not practicable" for Commerce to determine individual margins for each exporter. These selected exporters are referred to as the "mandatory" respondents. *See* I&D Mem. at 9.

On February 3, 2020, after the statutory deadlines to participate as a voluntary respondent passed, Liang Chyuan, a non-selected respondent exporter of subject merchandise, submitted respondent selection comments to Commerce and indicated that it was "willing and able to submit a response to [Commerce's ADD] questionnaire in this segment of the proceeding." I&D Mem. at 20 & n.109 (citations omitted). Liang Chyuan did not, however, submit questionnaire responses. *See id.* Liang Chyuan requested that Commerce use Liang Chyuan's data from the 2017-2018 administrative review or the non-selected respondents' rate from a prior review to determine Liang Chyuan's rate. *Id.* at 19.

Commerce assigned both mandatory respondents preliminary dumping margins of 78.17 percent using AFA due to their failure to respond to the questionnaires.[3] *Prelim. Results*, 85 Fed. Reg. at 19,139; Prelim. Mem. at 7–9. Commerce also found that Liang Chyuan's asserted willingness to submit questionnaire responses was insufficient for it to be chosen as a mandatory respondent because "it [was] not the next largest exporter of subject merchandise" and because its asserted "willingness is not a consideration" pursuant to the statutory scheme "unless [the] company has . . . fulfilled all the statutory and regulatory criteria for consideration" as a voluntary respondent. Prelim. Mem. at 3–4. Commerce found that Liang Chyuan had not taken the necessary steps to qualify as a voluntary respondent. *Id.* at 4. Commerce further explained that

---

[3] AFA rates, as established in the statute, may be determined based on data from the petition, other information placed on the record, or determinations in a prior segment of the proceeding regarding the subject merchandise. 19 U.S.C. § 1677e(b)(2) (2018).

carrying forward a previous review rate for Liang Chyuan was "not a feasible or legally sanctioned methodology." *Id.*

Commerce used the so-called "expected method" to determine preliminarily the rate applicable to the non-selected respondents: averaging the rates assigned to the mandatory respondents.[4] *See id.* at 10. This method yielded a 78.17 percent rate for the non-selected respondents, including Liang Chyuan. *Prelim. Results*, 85 Fed. Reg. at 19,139. The rates assigned to the mandatory respondents and the non-selected respondents' rate remained the same in the *Final Results*. 85 Fed. Reg. at 76,015.

Before the court, Plaintiffs challenge Commerce's use of the expected method to determine the non-selected respondents' rate. Plaintiffs argue that because the mandatory respondents' rates were based on AFA, the expected method does not yield results reasonably reflective of the potential dumping margins of the non-selected respondents. PrimeSource's MJAR at 13–35; Consol. Pls.' MJAR at 3.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018),[5] and 28 U.S.C. § 1581(c).

The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i).

---

[4] Commerce refers to its method, throughout the preliminary and final I&D Memoranda, as the "expected method." See I&D Mem. In one instance, Commerce refers to the use of a "simple-average" rather than weighted-average. *Id.* at 10. In this case, the result is the same and this one reference does not affect the court's analysis.

[5] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are to the 2018 edition, unless stated otherwise.

## DISCUSSION

At issue first is whether Commerce's use of the expected method based on the mandatory respondents' AFA rates to determine the rate to apply to the non-selected respondents was based on substantial evidence and otherwise in accordance with law. Second, the court examines whether Liang Chyuan was entitled to an individually calculated rate.

### I. Use of the Expected Method for Determining the Non-Selected Respondents' Rate was Lawful

The statute is silent regarding how to determine the rate for companies not selected for individual examination in an administrative review. In such a situation, Commerce looks to 19 U.S.C. § 1673d(c)(5) for guidance, which provides instructions for determining the "all-others rate" in an investigation.[6] *See, e.g.*, *Albemarle Corp. v. United States*, 821 F.3d 1345, 1352 & n.6 (Fed. Cir. 2016); *see also* I&D Mem. at 10 (discussing 19 U.S.C. § 1673d(c)(5)). Section 1673d(c)(5)(A) provides that the all-others rate assigned to non-examined companies is calculated as the "weighted average of the estimated weighted average dumping margins" assigned to individually

[6] In nonmarket-economy cases, companies may obtain a "separate rate" by establishing independence from government control. *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1373–74 (Fed. Cir. 2013); *Bosun Tools Co. v. United States*, No. 2021-1929, 2022 WL 94172 (Fed. Cir. Jan. 10, 2022) (unpublished). When numerous companies seek separate rates, Commerce will likewise select mandatory respondents and determine a non-selected respondents' rate for those respondents that have established their independence from government control. *See Bestpak*, 716 F.3d at 1374. Jurisprudence for determining the rate applicable to non-selected, separate rate respondents is relevant to determining non-selected respondents' rates in a market-economy proceeding. *See id.* at 1373–74 (discussing the market-economy rule alongside the nonmarket-economy rule); *Bosun*, 2022 WL 94172 at *2–3 & n.2 (same).

examined companies, "excluding any zero and *de minimis* margins, and any margins determined entirely under section 1677e of this title [i.e., on the basis of the facts available, including AFA]." 19 U.S.C. § 1673d(c)(5)(A).

When the dumping margins assigned to all individually examined companies are zero, *de minimis*, or based on facts available, the statute further provides that Commerce "may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated." *Id.* § 1673d(c)(5)(B).

The Statement of Administrative Action accompanying the Uruguay Round Agreements Act, which Congress has approved as an authoritative interpretation of the statute, *id.* § 3512(d), provides an "expected method" to determine the all-others rate in these situations, Uruguay Rounds Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103–316, vol. 1, at 873 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4201 ("SAA"). When the dumping margins for all individually investigated exporters and producers are determined entirely on the basis of facts available or are zero or *de minimis*, "[t]he expected method in such cases will be to weight-average the zero and *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available." *Id.* The SAA further provides that "if this method is not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable methods." *Id.*

Prior litigation surrounding these statutory provisions and corresponding portions of the SAA provides the backdrop to the court's consideration of this case. First, case law confirms that when Commerce relies on 19 U.S.C. § 1677f-1(c)(2) to select the largest exporters by volume for individual examination, it does so based on a statutorily supported assumption that the data from the largest exporters may be viewed as representative of all exporters. *See Albemarle*, 821 F.3d at 1353; *Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1012 (Fed. Cir. 2017). This respondent selection exercise occurs early in the administrative proceeding before questionnaires are issued and is based on the respondents' export volumes, not the results of the agency's dumping margin analysis. *See* Respondent Selection Mem. (Oct. 22, 2019) at 4–5, CR 5, PR 29, CJA Tab 2. In other words, the selected respondents are assumed to be representative of the non-selected respondents without regard to whether their final antidumping duty margin is zero, *de minimis*, based entirely on the use of AFA, or calculated based on the questionnaire responses of the selected respondents. *See Albemarle*, 821 F.3d at 1353; *Bosun*, 2022 WL 94172 at *4.

Second, this assumption of representativeness that arises with Commerce's reliance on 19 U.S.C. § 1677f-1(c)(2) carries weight when Commerce determines the rate applicable to non-selected respondents. As mentioned above, Commerce determines the rate for non-selected respondents consistent with 19 U.S.C. § 1673d(c)(5). Thus, in the first instance, Commerce will weight-average the above-*de minimis* calculated rates to determine the non-selected respondent rate. 19 U.S.C. § 1673d(c)(5)(A). If, however, the rates for all selected respondents are zero, *de*

*minimis*, or based on facts available, the SAA provides that the expected method is for Commerce to weight-average such rates to determine the non-selected respondents' rate. SAA at 873, *reprinted in* 1994 U.S.C.C.A.N. at 4201. In other words, it is *expected* that zero, *de minimis*, and facts available rates will be used in determining the non-selected respondents' rate. *See id.*; *Bosun*, 2022 WL 94172, at *4 (rejecting the appellants' argument that Commerce unreasonably based the separate rate, in part, on an AFA rate as "expressly foreclosed by statute").

*Albemarle* and *Changzhou Hawd* confirm that the expected method is the default method and that the burden of proof lies with the party seeking to depart from the expected method (or with Commerce as the case may be). For example, in *Albemarle*, Commerce sought to deviate from the expected method when the mandatory respondents were both found to have *de minimis* margins. *See Albemarle*, 821 F.3d at 1353. Instead of weight-averaging those results, Commerce decided to "carry[] forward" the results of prior administrative reviews to determine the rate for non-selected respondents. *Id.* In reviewing that determination, the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") held that "[t]he burden is not on the separate respondents to show that their dumping is the same as that of the individually examined respondents. Rather, Commerce must find based on substantial evidence that there is a reasonable basis for concluding that the separate respondents' dumping is different." *Id.*

The *Albemarle* court outlined two circumstances under which Commerce may depart from the expected methodology and carry forward a prior rate for any particular

respondent. First, the court found that Commerce needed some contemporaneous data to establish that the market and margins relevant to the subject merchandise had not changed such that the prior rates could be considered reflective of current rates. *Id.* at 1357. Second, in the AFA context, "where Commerce is allowed to consider deterrence as a factor," the court found that "Commerce may presume that 'a prior dumping margin imposed against an exporter in an earlier administrative review continues to be valid if the exporter fails to cooperate in a subsequent review.'" *Id.* at 1357–58 (quoting *KYD, Inc. v. United States*, 607 F.3d 760, 767 (Fed. Cir. 2010); citing *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1339–40 (Fed. Cir. 2002)). The court further stated that it has "upheld this presumption because 'if it were not so, the [exporter], knowing the rule, would have produced *current* information showing the margins to be less.'" *Id.* at 1358 (quoting *KYD*, 607 F.3d at 766). Other than in these two circumstances, "[t]here is no basis to simply assume that the underlying facts or calculated dumping margins remain the same from period to period," thus reinforcing the notion that the expected method is the default. *Id.* at 1356.

One year after the court's decision in *Albemarle*, the Federal Circuit again confirmed the relevance of the assumed representativeness of the mandatory respondents in *Changzhou Hawd*. *See Changzhou Hawd*, 848 F.3d at 1012 ("The very fact that the statute contemplates using data from the largest volume exporters suggests an assumption that those data can be viewed as representative of all exporters."). There, the court again found that in order to depart from the expected method, Commerce must identify substantial evidence that the non-selected

respondents' dumping was different from that of the mandatory respondents. *See id.* ("[T]he presumption of representativeness may be overcome . . . [with] 'substantial evidence that there is a reasonable basis for concluding that the separate respondents' dumping is different.'") (quoting *Albemarle*, 821 F.3d at 1353).

Recently, in *Bosun*, the Federal Circuit confirmed that the representativeness of the selected respondents is independent of the results of Commerce's dumping margin analysis.[7] *See* 2022 WL 94172, at *4. In the review underlying *Bosun*, Commerce selected the two largest respondents for examination and calculated a *de minimis* dumping margin for one respondent while basing the other respondent's rate on AFA. *Id.* at *2–3. Commerce determined the rate for the non-selected respondents by finding the simple average of these two rates.[8] *See id.* at *3. The *Bosun* court affirmed Commerce's inclusion of the AFA-based rate in the average assigned to the non-selected respondents. *See id.* at *4. In so doing, the court recalled its discussion in *Albemarle* regarding the "general assumption underlying the statutory framework"—specifically, the assumption that data from the largest volume exporters may be viewed

---

[7] Although *Bosun* is an unpublished opinion, as discussed herein, this court finds the opinion helpful to its analysis because the reasoning is consistent with and builds on the Federal Circuit's prior reasoning in *Albemarle* and *Changzhou Hawd* and is otherwise persuasive.

[8] By using the simple average, Commerce diverged from the expected method, which calls for using the weighted average of the selected respondents' rates. SAA at 873, *reprinted in* 1994 U.S.C.C.A.N. at 4201. Commerce may have used a simple average of the two respondents' rates (in other words, giving equal weight to each rate) in order to avoid revealing the actual volume of imports into the United States by the cooperating respondent if such information was considered business proprietary. Regardless, the Federal Circuit did not fault Commerce's use of a simple average.

as representative of all exporters, *id.* (quoting Albemarle, 821 F.3d at 1353)—and went on to find that "although *Albemarle* concerned a case with *de minimis* rates rather than AFA rates, its reasoning is equally applicable here; the same statutory language in [section] 1673d(c)(5)(B) that permits use of *de minimis* rates also permits use of AFA rates,"[9] *id.* (emphasis added).

These cases all recognize an important assumption that is built into Commerce's statutory authority to engage in respondent selection: that the largest exporters by volume are assumed to be representative of the non-selected respondents. Consistent with this assumption, the cases also stand for the proposition that Commerce is expected to use the mandatory respondents' rates to determine the antidumping duty rate to be assigned to the non-selected respondents.

These concepts, representativeness and expectedness, are connected. Representativeness allows Commerce to select certain respondents for individual examination and, in so doing, decline to individually examine other respondents. By allowing Commerce to focus its resources on certain respondents, the statute

---

[9] Plaintiffs repeatedly cite *Yangzhou Bestpak*, 716 F.3d 1370, to support their assertion that Commerce must demonstrate that the rate yielded by the expected method reasonably reflects the potential dumping margins of the non-selected respondents. *See* PrimeSource's MJAR at 7, 11–12. However, *Bosun* interprets *Bestpak*'s holding narrowly, emphasizing that *Bestpak*, which addressed a challenge to the results of an antidumping duty investigation, "simply found that Commerce's methodology was unreasonable 'as applied,' given the lack of data." 2022 WL 94172, at *4. In this case, as in *Bosun*, Commerce examined the existing data from prior administrative reviews and found that the record evidence did not support a finding that the expected method did not produce a rate that reasonably reflected the potential dumping of the non-selected respondents. *See infra*, pp. 18–21.

necessarily creates the assumption of representativeness because Commerce often will lack further information about the non-selected respondents. *See Albemarle*, 821 F.3d at 1353. Commerce is not otherwise required to collect information about the non-selected respondents because Commerce is permitted, in fact, expected, to treat the mandatory respondents as representative of the non-selected respondents when it determines the non-selected respondents' rate.[10]

This assumption of representativeness, combined with the expectation that Commerce will treat the mandatory respondents as representative of the non-selected respondents, provides a basis for understanding that part of the SAA language upon which PrimeSource focuses: "[I]f [the expected] method is not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-[examined] exporters or producers, Commerce may use other reasonable

[10] Plaintiffs argue that, despite all this, AFA rates are still impermissible for use in the expected method because they cannot be representative of current non-selected respondents' rates. PrimeSource's MJAR at 14–21. However, Plaintiffs fail to establish that the use of AFA to determine the mandatory respondents' rates in any way detracts from the presumption of representativeness. While Plaintiffs seek to differentiate the use of AFA rates in the expected method from the use of *de minimis* or zero rates by characterizing AFA rates as "punitive," the Federal Circuit has found that AFA rates may be representative of actual dumping because, "if it were not so, the [mandatory respondent], knowing the rule, would have produced *current* information showing the margin to be less." *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1190 (Fed. Cir. 1990). Moreover, the absence of any opposition to the use of AFA in this review by a mandatory respondent suggests that the AFA rates assigned to the mandatory respondents were probative of their dumping—further justifying these rates as representative. *See id. Bosun* also clearly resolves this issue in the context of the expected method: AFA rates are permissible in calculating the rate applied to the non-selected respondents. *Bosun*, 2022 WL 94172, at *4 (finding that AFA rates are acceptable inputs to the expected method for calculating all-others rates).

methods." SAA at 873, *reprinted in* 1994 U.S.C.C.A.N. at 4201. PrimeSource suggests that this language places an affirmative burden on Commerce to find, based on substantial evidence, that the expected method produces a rate that *is* reasonably reflective of the potential dumping by non-selected respondents. *See* PrimeSource's MJAR at 16. The court finds that the statute, SAA, and relevant opinions of the Federal Circuit do not support placing such a burden on Commerce.

As discussed above, the statute clearly permits Commerce to engage in a respondent selection process pursuant to 19 U.S.C. § 1677f-1(c) when certain conditions have been met. Commerce engaged in that process in this administrative review and no party challenges that decision. Having determined to examine the largest exporters by volume in this review, the statute permits Commerce to proceed with the review without requiring additional information from the non-selected respondents. *See, e.g.*, *Changzhou Hawd*, 848 F.3d at 1012 (discussing the statutory authority to select respondents rather than examining every exporter). Thus, interpreting the SAA to require Commerce to nevertheless engage in a data collection exercise with the non-selected respondents in order to determine their "potential dumping margins" would be inconsistent with the language of 19 U.S.C. § 1677f-1(c) expressly permitting Commerce to "limit[] its examination" to the largest exporters and producers by volume. 19 U.S.C. § 1677f-1(c)(2). Such an interpretation would defeat the purpose of the respondent selection process. Nothing in the statute, SAA, or jurisprudence suggests that such a burden exists.

To the contrary, the courts have long recognized that the burden of establishing relevant facts may properly be assigned to the party in control of the information necessary to establish those facts. *See, e.g.*, *Rhone Poulenc*, 899 F.2d at 1190–91 (placing "the burden of production on the [party] which has in its possession the information capable of rebutting the agency's inference"). In this case, the non-selected respondents are in control of the information that would establish whether applying the expected method based on the rates of the mandatory respondents would not reasonably reflect the potential dumping margins of those non-selected respondents. Thus, the court finds that the non-selected respondents bear the burden of providing evidence that the results of the expected method would not reasonably reflect the potential dumping margins of the non-selected respondents.

Accordingly, the court turns to whether Plaintiffs have provided substantial evidence to rebut the presumption of representativeness and thereby justify deviating from the expected method. Commerce found that the "expected method is reasonable here because the record evidence does not rebut the presumption that the mandatory respondents are representative." I&D Mem. at 9. While Plaintiffs argue that substantial evidence rebutted the presumption of representativeness, PrimeSource's MJAR at 13–34; Consol. Pl.'s MJAR at 3–5, Plaintiffs point to no evidence from this period of review to support their assertion that the expected method result was not reasonably reflective of their actual margins, *see* PrimeSource's MJAR at 27–34 (arguing that AFA rates are punitive and that past reviews yielded rates that were more reflective of current rates). Here, all respondents were aware of the AFA rate from prior reviews that would likely be

utilized in the case of non-participation by one or more mandatory respondents and its potential inclusion in the determination of the non-selected respondents' rate. *See* I&D Mem. at 14–15. Nevertheless, no non-selected respondent provided a timely voluntary questionnaire response or timely evidence that the mandatory respondents were in any way not representative of the remaining respondents (such as operating in a different market segment ("commodity" versus "high-end niche") or other evidence that might provide the agency with cause to question the representativeness of the mandatory respondents). Moreover, there is not sufficient evidence to indicate that the prior, lower rates to which Plaintiffs point are more reflective of current rates than the rate determined by the expected method.

*Bosun* offers some considerations for evaluating Commerce's analysis of the rates from prior reviews. In *Bosun*, as plaintiffs do here, the appellant argued that the rate applied to the non-selected respondents diverged from a "trend" of prior low rates. 2022 WL 94172, at *5. The Federal Circuit considered the individual rates determined for the appellant in the past and found that they were above *de minimis* and, in fact, trending upwards; it found Commerce's decision to weigh the most recent rate most heavily to be reasonable; and it acknowledged Commerce's consideration and rejection of earlier prior rates that, because they were lower, arguably detracted from the rate assigned to Bosun. *See id.* at *5–6.

Here, Commerce rejected Plaintiffs' suggestion of a pattern of lower rates, instead finding a history of AFA usage in previous reviews. *See* I&D Mem. at 14–15. While the non-selected respondents asserted that "calculated margins ranged from zero

percent to 27.69 percent, which [respondents] consider to be ‘low’ margins,” *id.* at 14, Commerce noted that the respondents “omitted any mention of the rates assigned in the history of the proceeding that were based on the 78.17 percent AFA rate,” whereas Commerce found that “more than half of the reviews contained [a] determination[] based on” AFA, *id.* at 14. Thus, for Commerce, there was no evidence that the 78.17 percent margins had less probative value than the so-called “low” rates to which respondents pointed. *See id.* at 14–15. As Commerce’s analysis highlights, examining only the calculated margins and excluding from consideration the AFA-based margins would not have yielded a full picture of the historical trends.

Commerce also did not ignore the previous antidumping rates. Commerce explained that past rates have been inconsistent from review to review, and that “if there is any pattern from segment-to-segment of the behavior of examined respondents, that pattern demonstrates that, most of the time, the mandatory respondents have failed to cooperate and have been assigned a rate based on AFA.” *Id.* at 14. Commerce relied on this assessment to find that there was no basis on which to find that past calculated rates are representative, because there was fluctuation from review to review. *See id.* at 14–15. For example, Commerce pointed to the fact that Pro-Team, a mandatory respondent in this and the previous review, received an AFA rate in this review but a calculated rate in the preceding review. *Id.* at 14. Similarly, Unicatch Industrial Co., Ltd. (“Unicatch”), “another frequent mandatory respondent” that was not under individual review here, was assigned rates of 6.16 percent and 27.69 percent in subsequent reviews—an increase of 350 percent from one review to the next. *Id.* at 15. Moreover,

Bonuts received AFA rates in the first, second, and fourth administrative reviews. *Id.* at 14. The table below demonstrates this lack of consistency—and the lack of consistently "low" rates—in frequent mandatory respondents' rates over the course of the reviews:[11]

| | **Pro-Team** | **Bonuts** | **Unicatch** |
|---|---|---|---|
| Investigation | 2.16%[12] | | |
| POR1 | | 78.17% | 78.17% |
| POR2 | 0% | 78.17% | 6.16% |
| POR3 | 6.72%[13] | | 27.69% |
| POR4 | 78.17% | 78.17% | |

These values support Commerce's conclusion that the rates fluctuated significantly from review to review and, thus, that looking to past reviews for evidence of current dumping lacks a logical foundation. Absent any consistency from review to review, Plaintiffs' arguments in favor of using rates from past reviews are unconvincing. Commerce's determination not to use past rates was therefore reasonable.

Commerce also noted that in each segment of this proceeding, the mandatory respondents' rates have formed the basis for any non-selected respondents' rate. *Id.* at 15. Moreover, "73 of 75 of the non-examined companies have never been examined in any segment of the proceeding," and "there is no evidence on this record or any other record that the 78.17 percent rate does not reflect their commercial reality." *Id.* In other

[11] These values, unless otherwise indicated, are extracted from the analysis in the I&D Memorandum on pages 14 and 15.

[12] *Certain Steel Nails From Taiwan*, 82 Fed. Reg. 55,090, 55,090 (Dep't Commerce Nov. 20, 2017) (notice of court decision not in harmony with final determination in less than fair value investigation and notice of amend. final determination).

[13] *Certain Steel Nails From Taiwan*, 85 Fed. Reg. 14,635, 14,636 (Dep't Commerce Mar. 13, 2020) (final results of antidumping duty admin. review and determination of no shipments; 2017–2018).

words, the relevant data from past reviews was severely limited. *See id.* Commerce found that Plaintiffs presented no compelling argument for why such limited, non-contemporaneous data would be more representative than margins determined in the present review. *See id.*

The above analysis indicates that Commerce's use of the expected method was supported by substantial evidence and in accordance with the law. As required by the substantial evidence standard, Commerce engaged with the data from past reviews and considered its relevance to the present review, finding that the lack of consistency in prior rates made past review data unusable for determining present rates. Commerce examined whether prior rates might be representative of current dumping rates, and it found that there was insufficient evidence on the record to rebut the presumed representativeness of the mandatory respondents' rates from this review. Thus, Plaintiffs' arguments in favor of carrying forward prior rates as a preferable method are unpersuasive. Accordingly, the court sustains Commerce's determination of the non-selected respondents' rate based on the expected method.

## II. Liang Chyuan Is Not Entitled to Different Status

PrimeSource attempts to distinguish Liang Chyuan from the other non-selected respondents in two ways: first, by noting that Liang Chyuan was "willing and able to submit a response," and, second, that Liang Chyuan had been a respondent in a previous review and received a lower rate. PrimeSource's MJAR at 26.

The Government asserts that Liang Chyuan's cooperation in one prior review is "not sufficient evidence to divert from the expected method and apply [Liang Chyuan's]

rate from the prior review, particularly given the fluctuating rates of Pro-Team and Unicatch, which have both received AFA in certain segments but not others." Def.'s Resp. at 19 (citing I&D Mem. at 19); *see also* Def.-Int.'s Resp. at 10. Further, the Government asserts that Liang Chyuan's willingness to submit a questionnaire response does not by itself entitle it to an individual rate because it did not participate as a voluntary respondent. *See* Def.'s Resp. at 19; *see also* Def.-Int.'s Resp. at 10.

PrimeSource fails to distinguish Liang Chyuan from the other non-selected respondents. Non-selected respondent rates are often applied to multiple non-selected respondents—indeed, that is the purpose of these rates. *See Bosun*, 2022 WL 94172, at *2 ("After Commerce determines the rates for the mandatory respondents, it then assigns a separate rate to the nonindividually examined respondents . . . ."). Non-selected respondents, as a general matter, are not entitled to individually determined rates; however, they may qualify as voluntary respondents and thereby receive individually determined rates if they provide necessary information in a timely fashion. *See* 19 U.S.C. § 1677m(a)(1)(A)(i).

To qualify as a voluntary respondent, a company must respond to the same questionnaire issued to the mandatory respondents within the same timeframe. 19 U.S.C. § 1677m(a)(1)(A)(i). Liang Chyuan did not do so. I&D Mem. at 20. PrimeSource attempts to analogize Liang Chyuan's status to that of a voluntary respondent simply because Liang Chyuan expressed a willingness to submit responses to the questionnaire. PrimeSource's MJAR at 26. However, Liang Chyuan was not required to request or await Commerce's approval to file a timely voluntary response.

*See* 19 U.S.C. § 1677m(a)(1)(A)(i). Moreover, Liang Chyuan did not express its willingness to participate until February 3, 2020, roughly two months after the deadlines for the mandatory respondents to respond to the agency's questionnaires. I&D Mem. at 20 & nn.109–10.

While Liang Chyuan participated as a respondent in one prior review in which it received a calculated margin based on its sales during that period of review, *see id.* at 19, that fact does not entitle Liang Chyuan to retain that calculated rate in the present review. As Commerce noted, "each administrative review is a separate segment of proceedings with its own unique facts." *Id.* at 19 n.103 (quoting *Shandong Huarong Mach. Co. v. United States*, 29 CIT 484, 491 (2005)). In addition, "there is no record evidence substantiating [Liang Chyuan's] claim that it would have received the same result in this review as it did in a previous review, had it been selected for individual examination." *Id.* at 20. In sum, Commerce was justified in finding that Liang Chyuan was not entitled to an individual rate because Liang Chyuan did not take the necessary steps to qualify for an individual rate or otherwise establish that the non-selected respondent rate should not apply.

## CONCLUSION

Based on the foregoing, the court will sustain Commerce's *Final Results*. Judgment will enter accordingly.

/s/ Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated: June 16, 2022
New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| PRIMESOURCE BUILDING PRODUCTS, INC.,<br>Plaintiffs,<br><br>and<br><br>CHENG CH INTERNATIONAL CO., LTD., CHINA STAPLE ENTERPRISE CORPORATION, DE FASTENERS INC., HOYI PLUS CO., LTD., LIANG CHYUAN INDUSTRIAL CO., LTD., TRIM INTERNATIONAL INC., UJL INDUSTRIES CO., LTD., YU CHI HARDWARE CO., LTD., AND ZON MON CO., LTD.,<br>Consolidated-Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br>Defendant,<br><br>and<br><br>MID CONTINENT STEEL & WIRE INC.,<br>Defendant-Intervenor. | Before: Mark A. Barnett, Chief Judge<br>Consol. Court No. 20-03911 |

**JUDGMENT**

These consolidated cases having been duly submitted for decision, and the court, after due deliberation, having rendered a decision herein; now therefore, in conformity with said decision, it is hereby

**ORDERED** that the U.S. Department of Commerce's final results in the fourth administrative review of the antidumping duty order on certain steel nails from Taiwan,

*see Certain Steel Nails From Taiwan*, 85 Fed. Reg. 76,014 (Dep't Commerce Nov. 27, 2020) (final results of antidumping duty admin. review and final determination of no shipments; 2018-2019), are **SUSTAINED**; and it is further

**ORDERED** that the subject entries must be liquidated in accordance with the final court decision, including all appeals, as provided for in section 516A(e) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(e) (2018).

/s/ Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated: June 16, 2022
New York, New York

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 28th day of December, 2022, I caused this Corrected Brief of Appellants to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel of record as registered CM/ECF users.

/s/ Kelly A. Slater
*Counsel for Appellants*
*Cheng Ch International Co., Ltd.,*
*China Staple Enterprise Corp.,*
*De Fasteners Inc., Hoyi Plus Co., Ltd.,*
*Liang Chyuan Industrial Co., Ltd.,*
*Trim International Inc.,*
*Ujl Industries Co., Ltd.,*
*Yu Chi Hardware Co., Ltd., and*
*Zon Mon Co., Ltd.*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

   [ X ] this brief contains [*2,990*] words.

   [ ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2. This brief complies with the typeface and type style requirements because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

   [ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: December 28, 2022

/s/ Kelly A. Slater
*Counsel for Appellants*
*Cheng Ch International Co., Ltd.,*
*China Staple Enterprise Corp.,*
*De Fasteners Inc., Hoyi Plus Co., Ltd.,*
*Liang Chyuan Industrial Co., Ltd.,*
*Trim International Inc.,*
*Ujl Industries Co., Ltd.,*
*Yu Chi Hardware Co., Ltd., and*
*Zon Mon Co., Ltd.*