**2022-2128, 22-2129**

# United States Court of Appeals for the Federal Circuit

---

PRIMESOURCE BUILDING PRODUCTS, INC.,
CHENG CH INTERNATIONAL CO., LTD.,
CHINA STAPLE ENTERPRISE CORP., DE FASTENERS INC.,
HOYI PLUS CO., LTD., LIANG CHYUAN INDUSTRIAL CO., LTD.,
TRIM INTERNATIONAL INC., UJL INDUSTRIES CO., LTD.,
YU CHI HARDWARE CO., LTD., ZON MON CO., LTD.,

*Plaintiffs-Appellants,*

*v.*

UNITED STATES, MID CONTINENT STEEL & WIRE, INC.,

*Defendants-Appellees.*

---

*Appeals from the United States Court of International Trade
In Case Nos. 1:20-CV-03911-MAB, 1:20-CV-03934-MAB
(Hon. Mark A. Barnett, Judge)*

---

**REPLY BRIEF OF APPELLANTS CHENG CH INTERNATIONAL CO., LTD.,
CHINA STAPLE ENTERPRISE CORPORATION, DE FASTENERS INC.,
HOYI PLUS CO., LTD., LIANG CHYUAN INDUSTRIAL CO., LTD.,
TRIM INTERNATIONAL INC., UJL INDUSTRIES CO., LTD.,
YU CHI HARDWARE CO., LTD., and ZON MON CO., LTD**

KELLY A. SLATER
APPLETON LUFF PTE LTD.
1025 Connecticut Avenue NW, Suite 1000
Washington, DC 20036
(301) 649-2149

*Counsel for Appellants Cheng Ch International Co., Ltd.,
China Staple Enterprise Corp., De Fasteners Inc., Hoyi Plus Co., Ltd.,
Liang Chyuan Industrial Co., Ltd., Trim International Inc.,
Ujl Industries Co., Ltd., Yu Chi Hardware Co., Ltd., and Zon Mon Co., Ltd.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

I.    INTRODUCTION ............................................................1

II.   STATEMENT OF RELATED CASES ...........................................1

III.  STATEMENT OF THE ISSUE ...............................................1

IV.   STATEMENT OF THE CASE ................................................2

V.    SUMMARY OF ARGUMENT .................................................4

VI.   ARGUMENT.............................................................4

      A.    Standard of Review ............................................4

      B.    The Government's Position That Applying Total AFA to
            Cooperative, All Other Respondents Like Taiwan Plaintiff-
            Appellants Constitutes a Justifiable Application of the
            "Expected Method" Is Untenable, and Should Be Rejected ...........5

            1.    Relevant Legal Standards Governing the Treatment of
                  Non-Investigated, Cooperative Respondents.................5

            2.    Taiwan Plaintiff-Appellants' Total AFA Treatment Is Not
                  a Reasonable Application of the "Expected Method," as
                  It Contradicts the Punitive Treatment Intended by Such
                  Treatment Under the Statute as Well as the Court's
                  Decision in *Albemarle* .................................7

            3.    The Government's Reliance on the SAA's Guidance with
                  Respect to Interpreting the Statute in this Case Is Flawed
                  and Contravenes the Plain Meaning of the Statute ..........13

4.      The AFA Rate Alleged in the Original Petition Is Not a
        Reasonable Reflection of Commercial Reality in
        Subsequent Administrative Reviews, and So the Total
        AFA Rate Applied to Taiwan Plaintiff-Appellants in the
        2018-2018 Review Is Unjustified ............................................17

VII.   CONCLUSION AND PRAYER FOR RELIEF ...........................................19

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

*Albemarle Corp. v. United States*,
    821 F.3d 1345 (Fed. Cir. 2016)..........................................................7, 8, 9, 15

*Atlantic Sugar, Ltd. v. United States*,
    744 F.2d 1566 (Fed. Cir. 1984).........................................................5

*Consolidated Edison Co. v. NLRB*,
    305 U.S. 197, 59 S. Ct. 206, 83 L. Ed. 126 (1938) .........................................5

*Magnesium Corp. of America v. United States*,
    166 F.3d 1364 (Fed. Cir. 1999).........................................................4

*PrimeSource Building Products, Inc. et al. v. United States*,
    Consol. Ct. No. 20-03911,
    Slip Op. 22-73 (Ct. Int'l Trade June 16, 2022).......................................1, 2, 4

*Xiamen Int'l Trade and Indus. Co., Ltd. v. United States*,
    953 F. Supp. 2d 1307 (Ct. Int'l Trade 2013) ...................................................6

## STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i)........................................................5

19 U.S.C. § 1673d(c)(5)(A) ...........................................................5, 6

19 U.S.C. § 1673d(c)(5)(B) ...........................................................3, 6

## I.    INTRODUCTION

On behalf of Plaintiff-Appellants Cheng Ch International Co., Ltd., China Staple Enterprise Corporation, De Fasteners Inc., Hoyi Plus Co., Ltd., Liang Chyuan Industrial Co., Ltd., Trim International Inc., UJL Industries Co., Ltd., Yu Chi Hardware Co., Ltd., and Zon Mon Co., Ltd. (collectively, "Taiwan Plaintiff-Appellants"), were hereby submit the following reply brief in the appeal of *PrimeSource Building Products, Inc. et al. v. United States*, Consol. Ct. No. 20-03911, Slip Op. 22-73 (Ct. Int'l Trade June 16, 2022), Joint Appendix ("Appx") Appx0001-0023 ("*PrimeSource*").

## II.    STATEMENT OF RELATED CASES

Counsel for Taiwan Plaintiff-Appellants is not aware of any appeal in or from this same civil action that has previously been before this Court or any other appellate court.  Taiwan Plaintiff-Appellants are also not aware of any pending actions that stand to be directly affected by the Court's decision in this appeal.

## III.    STATEMENT OF THE ISSUE

The issue in this case concerns whether the U.S. Department of Commerce's ("Commerce") decision to apply an antidumping duty (AD) rate to Taiwan Plaintiff-Appellants based solely on the total adverse facts available ("total AFA") rate applied to the two mandatory respondents selected for individual examination

in the proceeding was based on substantial evidence or was in otherwise in accordance with law.

## IV.    STATEMENT OF THE CASE

Taiwan Plaintiff-Appellants challenge Commerce's decision to apply the total AFA rate to them in the underlying AD proceeding, given that they were cooperative respondent parties who were not selected for individual examination, but nonetheless were given a punitive, total AFA rate as a result of the actions of the respondents who had been selected for individual examination, but were not cooperative in the proceeding.

As argued before the Court of International Trade (CIT) in *PrimeSource*, Taiwan Plaintiff-Appellants' challenge remains grounded in the provisions of the Tariff Act of 1930 (the "Statute") which provide that AD rates for non-examined, cooperative respondents (commonly referred to as "all other respondents") in AD duty administrative reviews should be the weighted average of the rates assigned to the respondents individually examined, but <u>excluding</u> rates assigned to mandatory respondents that are based on total AFA, or are calculated as zero or at *de minimis* levels.  The Statute further provides alternative guidance in situations where all of the respondents individually examined receive one of such rates, thus making it impossible for Commerce to calculate weight-averaged rates of the mandatory respondents for purposes of assigning rates to the all-other respondents.  In those

cases, Commerce "may use any reasonable method" to establish a rate for those respondents.  19 U.S.C. § 1673d(c)(5)(B) (1994).

Taiwan Plaintiff-Appellants respectfully submit that substantial record evidence was in place on the underlying administrative record for assigning a rate to all other respondents without having to resort to the punitive, total AFA rate applied to the two non-cooperative mandatory respondents in the *Final Results*. Rather, Commerce had ample evidence to assign a non-punitive rate to Taiwan Plaintiff-Appellants based on other evidence which constituted a more reasonable reflection of commercial market-based rates.  Such evidence was available on the record in the now-contested review segment in the form of individually calculated rates in prior review segments involving nails from Taiwan; however, Commerce dismissed this evidence in the *Final Results*, opting to apply punitive, total AFA treatment to Taiwan Plaintiff-Appellants instead.  We respectfully submit that this decision is contrary to law.

Thus, in concert with the language of the Statute and the substantial evidence standard of review required by it, we maintain our challenge to the punitive, total AFA treatment applied to Taiwan Plaintiff-Appellants in the *Final Results*, and ask the Court to reverse this decision.

## V.    SUMMARY OF ARGUMENT

This case concerns whether Commerce may lawfully apply an "all-other respondents" AD rate to cooperative, non-mandatory respondents like Taiwan Plaintiff-Appellants based solely on the punitive, total AFA rate applied to the two non-cooperative mandatory respondents selected for individual examination in the proceeding, namely, Bonuts Hardware Logistics Co., LLC ("Bonuts") and Pro-Team Coil Nail Enterprise, Inc. ("Pro-Team"). Our position is that the decision to apply total AFA to Taiwan Plaintiff-Appellants was not based on substantial evidence or was otherwise not in accordance with law given that Taiwan Plaintiff-Appellants were cooperative at all times in the proceeding, and thus the underlying punitive and/or remedial intent behind the Statute's remedy for non-cooperation in the form of total AFA is misplaced with respect to Taiwan Plaintiff-Appellants.

Thus, Taiwan Plaintiff-Appellants ask the Court to find that Commerce's decision in the *Final Results* is unlawful, and reverse the CIT's underlying decision in *PrimeSource*.

## VI.    ARGUMENT

### A.    <u>Standard of Review</u>

This Court reviews decisions of the CIT *de novo*, applying "the statutory standard anew" to determine whether a Commerce determination is lawful. *Magnesium Corp. of America v. United States*, 166 F.3d 1364, 1369 (Fed. Cir.

1999). Under the statutory standard, Commerce decisions are deemed unlawful if they are not supported by substantial evidence or are otherwise unsupported by law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i) (1994).

Regarding questions of fact, "{s}ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938). Substantial evidence is measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1566, 1562 (Fed. Cir. 1984) (*citations omitted*).

### B. The Government's Position That Applying Total AFA to Cooperative, All Other Respondents Like Taiwan Plaintiff-Appellants Constitutes a Justifiable Application of the "Expected Method" Is Untenable, and Should Be Rejected[1]

#### 1. Relevant Legal Standards Governing the Treatment of Non-Investigated, Cooperative Respondents

As stated previously, section 1673d(c)(5)(A) of the Statute provides that rates for non-examined, cooperative respondents should be the weighted average of the rates assigned to all respondents that are individually investigated, excluding

---

[1] We note from the outset that because the positions stated in the response brief of Defendant-Appellee Mid Continent Steel & Wire, Inc., ECF No. 44, largely echo the Government's positions on this point, this reply brief will concentrate on the positions presented in the Government's response brief, and principally cite thereto in reply.

rates assigned to mandatory respondents that are based either on total AFA, zero, or *de minimis* rates. *See* Taiwan Pl.-App. Br. at 8, ECF No. 32. Section 1673d(c)(5)(B) of the Statute moreover provides alternative guidance in situations where all mandatory respondents individually investigated receive either total AFA, zero, or *de minimis* rates, thus making it impossible for Commerce to weight average rates received by the mandatory respondents for purposes of calculating a rate for the all-other respondents. *Id*. In such cases, Commerce "may use any reasonable method" to establish the rate for all other cooperative respondents. 19 U.S.C. § 1673d(c)(5)(B).

The requirement that AD rates be reasonable reflections of non-examined, cooperative respondents' actual margins applies to determinations made under section 1673d(c)(5)(A) and section 1673d(c)(5)(B). *See*, *e.g.*, *Xiamen Int'l Trade and Indus. Co., Ltd. v. United States*, 953 F. Supp. 2d 1307, 1327 (Ct. Int'l Trade 2013) ("According to the Government, if Commerce applies the general rule (*i.e.*, weight averages all margins that are not zero, *de minimis,* or based on total facts available), it need not consider whether the resulting rate reasonably reflects potential dumping margins for separate rate respondents. . . . While this is correct as a general rule, it is nonetheless <u>illogical</u> not to expect that the preferred methodology should also <u>reasonably reflect potential dumping margins</u>.") (emphasis added). In this case, the rate applied to Taiwan Plaintiff-Appellants

reflected one rate only—the total AFA rate applied to the two non-cooperative

mandatory respondents—and so is objectionable as a matter of fact and law.

> 2. Taiwan Plaintiff-Appellants' Total AFA Treatment Is Not a
>    Reasonable Application of the "Expected Method," as It
>    Contradicts the Punitive Treatment Intended by Such Treatment
>    Under the Statute as Well as the Court's Decision in *Albemarle*

The AD rates alleged in petitions are usually the highest rates available in a

proceeding, and so are regarded as punitive, and are routinely used as such by

Commerce in the form of "total AFA" in the various proceedings that ensue. But,

in administrative reviews conducted after the imposition of an AD Order, other

evidence often comes to light which might be available regarding the treatment of

respondents not selected for individual examination in those segments. In

segments where the mandatory respondents are selected for individual examination

do not cooperate in the proceeding, and so are given total AFA treatment, the

Statute provides alternative options for applying AD rates to the smaller,

cooperative respondents not selected for individual examination, like Taiwan

Plaintiff-Appellants (*i.e.*, "all other respondents").

Indeed, the Court's decision in *Albemarle Corp. v. United States*, 821 F.3d

1345 (Fed. Cir. 2016) ("*Albemarle*"), held that calculating margins for all other

respondents under the "expected method" based upon a weighted-average of *de*

*minimus* rates that were calculated based on the mandatory respondents' own

reported data was permissible under the Statute and the SAA.  On this point, the

Court stated the following:

> It is true that when there are non-de minimis margins assigned to individually examined respondents, the statute instructs Commerce to calculate the separate rate by averaging the margins assigned to the individually examined respondents, excluding any zero and de minimis margins." . . . But it is equally clear that when all individually examined respondents are assigned de minimis margins, Commerce has no similar mandate to routinely exclude zero or de minimis margins. Congress has spoken directly to this precise situation in § 1673d(c)(5)(B), and the SAA unambiguously provides that the expected method to calculate the separate rate in such circumstances is to average the individually examined respondents' de minimis margins.

*Albemarle*, 821 F.3d at 1353-54 (internal citations omitted).   The *Albemarle*

Court goes to explain that

> The government cannot contend that methodology employing de minimis margins is disfavored when Congress has unmistakably explained that it is, in fact, preferred.  . . . The government's policy simply cannot be distilled from the statute in this context, and Commerce's insistence on using its hostility to de minimis rates as the driving force behind its methodology is on its face arbitrary and capricious.

*Id.*, 821 F.3d at 1354 (internal footnote omitted).

In the instant case, however, there were no margin rates calculated for the

two mandatory respondents—whether zero, *de minimis*, or some other rate—

because the mandatory respondents were uncooperative and given total AFA by

Commerce.  This thus presented an evidentiary vacuum when it came to the rate to

apply to Taiwan Plaintiff-Appellants.

The *Albemarle* decision provides further guidance on this point in terms of relying upon substantial evidence of margins calculated in prior segments of the proceeding rather than resort to total AFA treatment for all other respondents like Taiwan Plaintiff-Appellants.  The Court states that

> In the Adverse Facts Available ("AFA") context, where Commerce is allowed to consider deterrence as a factor, we have upheld Commerce's use of data from a previous administrative review. We have explained that when an exporter is not cooperating, "Commerce is permitted to use a 'common sense inference that the highest prior [dumping] margin is the most probative evidence of current margins.'" . . . In other words, Commerce may presume that "a prior dumping margin imposed against an exporter in an earlier administrative review continues to be valid if the exporter fails to cooperate in a subsequent administrative review." . . .  We have upheld this presumption because "if it were not so, the [exporter], knowing of the rule, would have produced *current* information showing the margins to be less."

*Id.*, 821 F.3d at 1358 (internal citations omitted).  The "current" situation referenced in *Albemarle* was a situation where the mandatory respondents were given *de minimis* margins and thus were found not to have engaged in dumping for purposes of that segment.  In the instant case, however, the mandatory respondents did not cooperate, and so no margins for them were calculated based on *current* data, but rather Commerce used the rate alleged in the petition, which continues to be used as the total AFA rate.

In its response brief, the Government correctly re-iterates Taiwan Plaintiff-Appellants' position disputing Commerce's application of the total AFA rate to

them in the underlying proceeding. The Government characterizes that position as "frowned upon" by Taiwan Plaintiff-Appellants under the particular facts and circumstances of the case, but ultimately characterizes it as a position which does not rise to the level of an "outlandish claim that consideration of AFA-based rates in calculating the all-others rate is unlawful." Def.-App. Resp. Br. at 27 n.9, ECF No. 41.

We believe that the Government's characterization of Taiwan Plaintiff-Appellants position is correct, albeit only in part. First, we concede that a consideration of AFA-based rates with respect to the rate applied to all other respondents is not *ipso facto* unlawful. If substantial evidence demonstrates that one or more of the all other respondents behaved in a manner during the proceeding such that adverse treatment may be warranted, then by all means, consideration of whether an AFA-based rate should be applied to one or more of them is permitted by the Statute, based on the substantial evidence standard.

In this case, however, there is no record evidence that Taiwan Plaintiff-Appellants behaved such that the application of total AFA to them was warranted, or much less represents a reasonable reflection of commercial reality based solely on the behavior of the two mandatory respondents which gave rise to total AFA treatment in the first place for this review segment.

Extending such punitive treatment to all other cooperative exporter parties—in this case, the smaller ones in terms of subject merchandise shipment quantities during the review period, facts which did not give rise to individual examination—should not be permitted as it sets a kind of evidentiary "trap" for them based on the actions of non-cooperative, larger exporters that were chosen for individual examination.  In other words, Commerce's decision in the *Final Results* with respect to Taiwan Plaintiff-Appellants contravenes the Statute insofar as it frustrates the Statute's underlying intent both to encourage and reward cooperation, and to punish non-cooperation.

The total AFA rate applied to Taiwan Plaintiff-Appellants in the underlying proceeding seems to be founded on two main underlying conclusions.  First, Commerce found that the two respondents selected for individual examination did not participate in any meaningful way, and so were found not to be cooperative as a matter of fact and law.  Second, the rate that was alleged in the petition in the original AD investigation of steel nails from Taiwan was applied not just to the mandatory respondents in this segment but also to the smaller, cooperative respondents (*i.e.*, Taiwan Plaintiff-Appellants) as well, as total AFA in concert with the first finding, but without any evidence of uncooperativeness or other reasons justifying adverse treatment under law on the part of Taiwan Plaintiff-Appellants.

11

In the process, the Statute's underlying objective to encourage participation in, and cooperativeness with, Commerce AD proceedings was thwarted—despite substantial record evidence of Taiwan Plaintiff-Appellants' efforts to participate and cooperate to the best of their abilities. Conversely, there is no record evidence that Taiwan Plaintiff-Appellants failed to cooperate in such a manner as to give rise to total AFA treatment, and Commerce engaged in no discussion on the record facts regarding this, one way or the other, in the *Final Results*.

We do not take the position that the Government's stance directly contravenes the governing provisions of the Statute in terms of the evidentiary considerations that must be evaluated with respect to available rates on which to rely for respondents like Taiwan Plaintiff-Appellants. In AD proceedings, evidence certainly does matter—the law indeed mandates it. Rather, Taiwan Plaintiff-Appellants continue to take issue with how Commerce resorted to the application of total AFA to them based on the non-cooperativeness of the mandatory respondents, and how the rate applied to Taiwan Plaintiff-Appellants was a punitive rate that was not "reasonably representative" in terms of any data beyond that originally alleged in the petition back in 2014, carried forward in somewhat of an arbitrary fashion to a review period that took place several years later (*i.e.*, the 2018-2019 review period).

Insofar as the Statute encourages the cooperation of foreign exporters, of whatever size, it thus provides a mechanism for Commerce to accord favorable treatment to a party that cooperates to the best of its ability in an AD proceeding. Conversely, the Statute provides options to accord punitive treatment to respondents in cases where the evidence demonstrates that they have not behaved cooperatively. What is problematic about the underlying Commerce decision is that it short-circuits that dichotomy by punishing cooperative, all other respondents based on the actions of non-cooperative mandatory respondents, while at the same time failing to provide substantial evidence in support of that finding as regards all other respondents like Taiwan Plaintiff-Appellants. As such, Commerce's decision in the *Final Results* is unsupported by the evidence and the law.

3. <u>The Government's Reliance on the SAA's Guidance with Respect to Interpreting the Statute in this Case Is Flawed and Contravenes the Plain Meaning of the Statute</u>

The Government is correct that, in the various administrative reviews of the AD order involving certain steel nails from Taiwan, the individually calculated margin rates varied, from 0.00% at the lowest, upwards through 2.16% to the 6% range, and even reaching 27.69% at one point. *See* Appx0020. In some of those reviews, total AFA rates were applied to certain mandatory respondents. *See id*. Substantial record evidence of rates calculated in prior reviews that were

contemporaneous to varying degrees with the review period of the now-challenged

decision was disregarded by Commerce in the *Final Results*.

Rather than focus on the language of the Statute for purposes of the *Final*

*Results*, the Government now seems to rely on the language of the SAA in defense

of its position, stating in their brief several contradictory positions, which we

address one by one below.

For example, the Government's brief states:

> First, the SAA, which is the authoritative interpretation of the relevant statute, provides that the "expected," or default, method for determining the all-others rate when all the margins for the examined respondents are zero, *de minimis*, or based entirely on facts available, is to **weight-average** those margins. SAA at 873.

Def.-App. Resp. Br. at 26, ECF No. 41 (emphasis added).  In this case, the

Government's first point in support of Commerce's underlying decision is strained

as a matter of fact and law.  Given that the only AD rate that Commerce was

willing to entertain on the administrative record was the total AFA rate that was

applied to the uncooperative mandatory respondents, there was nothing that could

be weight-averaged in the first place.  Quite simply, since a total AFA rate cannot

be weight averaged with itself, then the SAA guidance described above does not

apply with respect to the treatment accorded to Taiwan Plaintiff-Appellants in the

*Final Results*.

In further support of Commerce's decision to solely apply a total AFA rate to Taiwan Plaintiff-Appellants by virtue of SAA's "expected method," the Government makes the next point:

> Second, no authority forbids Commerce from including an AFA rate assigned to a mandatory respondent when utilizing the expected method; indeed, the SAA expressly contemplates such inclusion.

*Id*. at 27.  This reasoning exposes another weakness in the Government's position. Namely, it runs afoul of the plain language of the Statute which mandates the exclusion of total AFA rates from the calculation of a rate for all other, cooperative respondents as a baseline measure, and provides an alternative in the form of a "any reasonable method," which logically implies a shift to any <u>other</u> "reasonable method" as a secondary measure.  *See* Sections B.1 & B.2 *infra*.

Third, the Government correctly posits in its defense of the *Final Results* that rates of the mandatory respondents selected for individual examination are presumed to be representative of the rates of all other respondents by law.  *See* Def.-App. Resp. Br. at 27, ECF No. 41.  But, the Government's position implicitly assumes that such mandatory respondents were cooperative and so received rates based on their own submitted data, as in the *Albemarle* case; yet that is not the case here.  This line of reasoning is borne out by the blanket, conclusory statement the Government makes insofar as Commerce merely "followed the expected method in determining the all-others rate in the underlying proceeding," their

fourth point, but this recitation of that so-called "method" is not backed up by substantial evidence of the appropriateness of it as applied to Taiwan Plaintiff-Appellants in the underlying proceeding. *Id*. Yet substantial evidence is vital to such determinations.

Finally, we address the Government's argument regarding the alleged affirmative duty of Taiwan Plaintiff-Appellants to submit information to counter the use of total AFA against them in Commerce's final decision. We restate the Government's argument on this point, as follows:

> Fifth, despite the opportunity to do so, no party put evidence on the record of the underlying proceeding purporting to show that the rates of the mandatory respondents would not be reflective of the non-selected respondents' dumping margins.

*Id*. This again creates an evidentiary conundrum for the Government to support the treatment of Taiwan Plaintiff-Appellants in the *Final Results*, as neither the Statute nor the SAA establish a burden on the all-other respondents to demonstrate that a total AFA rate, in this case, should not be applied to them. Commerce issued no supplemental questionnaires, for example, to either one or more of the all-other respondents on this point soliciting additional information or indicating that such information was needed.

Taiwan Plaintiff-Appellants nonetheless did address this point for the record at the briefing stage at the Commerce level, proffering that a more reasonable rate was available to be applied to them as an alternative to the total AFA rate applied

16

to the uncooperative mandatory respondents, and in a manner that which could

better comport with the Statute.  As we have consistently stated,

> Commerce's blanket reliance on the *Albemarle* decision in support of
> its total AFA treatment of Taiwan Plaintiff-Appellants was
> unwarranted in this case, particularly given that Taiwan Plaintiff-
> Appellants suggested a far more reasonable method based on the
> margin rate calculated in the then-most recently completed review
> segment of the proceeding, which was 12.90%, calculated for Taiwan
> Plaintiff-Appellant LC.

Appx0617-0618.  So, in this regard, the Government's position that Taiwan

Plaintiff-Appellants failed to satisfy some sort of evidentiary burden that is not

required by the Statute is strained at best, as the law does not confer such a burden

on cooperative all-other respondents like Taiwan Plaintiff-Appellants in order to

demonstrate that they do not deserve the punitive treatment accorded to non-

cooperative mandatory respondents when they themselves were cooperative.

    4.   The AFA Rate Alleged in the Original Petition Is Not a
             Reasonable Reflection of Commercial Reality in Subsequent
             Administrative Reviews, and So the Total AFA Rate Applied to
             Taiwan Plaintiff-Appellants in the 2018-2018 Review Is
             Unjustified

Even assuming that the SAA carries more weight than the Statute—which

we respectfully submit that it does not—no weight averaging took place at all in

the *Final Results*.  Rather, the only data-driven margin analysis in any form was

based entirely on the total AFA rate that had been set forth in the petition, and that

rate was applied to the totally non-cooperative mandatory respondents, and also

applied to the totally <u>cooperative</u> non-selected respondents.  The record from prior reviews, which is matter of public information just as much as the AD petition against nails from Taiwan originally filed, demonstrates that Commerce could have just as easily carried forward actual, calculated rates from prior, subsequent segments that were, by definition, more reasonably reflective of commercial reality because they (i) were not theoretical, but rather were fact-based; and (ii) were closer in time to prior review periods relative to the now-contested 2018-2019 review period.

As such, the Government's fifth argument noted above fails given that Taiwan Plaintiff-Appellants did raise such arguments in the underlying proceeding about the opportunity to use rates from at least one prior segment to calculate a rate for all other respondents, but Commerce declined to do so.  The individual respondent rates calculated in prior segments are a matter of public record, in addition to being raised in the now-contested proceeding, and so were well within Commerce's purview to rely upon in its decision-making process as regards the treatment of Taiwan Plaintiff-Appellants in the 2018-2019 administrative review of certain steel nails from Taiwan.  Commerce's disregard of them in favor of total AFA treatment for Taiwan Plaintiff-Appellants in the *Final Results* thus is unreasonable and unlawful.

## VII.   CONCLUSION AND PRAYER FOR RELIEF

For the above reasons, the Court should find that Commerce's decision to apply total AFA to the Taiwan Plaintiff-Appellants is not based on substantial evidence and is not otherwise in accordance with law.  Taiwan Plaintiff-Appellants respectfully request that the Court overturn Commerce's decision to apply total AFA to them in the *Final Results* and reverse the decision of the Court of International Trade for further consideration.

Respectfully submitted,

/s/ Kelly A. Slater
Kelly A. Slater, Esq.
APPLETON LUFF PTE LTD
1025 Connecticut Ave., NW
Suite 1000
Washington, DC 20036
Tel:  (301) 649-2149
Email:  slater@appletonluff.com

May 25, 2023

*Counsel for Plaintiff-Appellants Cheng Ch International Co., Ltd., China Staple Enterprise Corporation, De Fasteners Inc., Hoyi Plus Co., Ltd., Liang Chyuan Industrial Co., Ltd., Trim International Inc., UJL Industries Co., Ltd., Yu Chi Hardware Co., Ltd., and Zon Mon Co., Ltd.*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 25th day of May, 2023, I caused this Reply Brief of Appellants to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel of record as registered CM/ECF users.

/s/ Kelly A. Slater
*Counsel for Appellants*
*Cheng Ch International Co., Ltd.,*
*China Staple Enterprise Corp.,*
*De Fasteners Inc., Hoyi Plus Co., Ltd.,*
*Liang Chyuan Industrial Co., Ltd.,*
*Trim International Inc.,*
*Ujl Industries Co., Ltd.,*
*Yu Chi Hardware Co., Ltd., and*
*Zon Mon Co., Ltd.*

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*4,177*] words.

    [    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.  This brief complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: May 25, 2023          /s/ Kelly A. Slater
                             *Counsel for Appellants*
                             *Cheng Ch International Co., Ltd.,*
                             *China Staple Enterprise Corp.,*
                             *De Fasteners Inc., Hoyi Plus Co., Ltd.,*
                             *Liang Chyuan Industrial Co., Ltd.,*
                             *Trim International Inc.,*
                             *Ujl Industries Co., Ltd.,*
                             *Yu Chi Hardware Co., Ltd., and*
                             *Zon Mon Co., Ltd.*